IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BRIAN PARKS,

      Petitioner,

v.                                      Case No. 2:20-cv-00691

DONALD F. AMES, Superintendent,
Mt. Olive Correctional Complex,

      Respondent.


**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Petitioner Brian Parks's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 2); Parks's request for discovery (ECF No. 21); and Respondent's Motion for Summary Judgment. (ECF No. 12). This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

After thorough consideration of the record, the undersigned conclusively **FINDS** that Parks fails to state a meritorious claim under § 2254. Pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, a petition for habeas relief must be dismissed when "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Therefore, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY**

Parks's Petition and request for discovery, **GRANT** Respondent's Motion for Summary Judgment, **DISMISS** this case, and **REMOVE** it from the docket of the Court.

## I.     Relevant Facts and Procedural History

### A.     Proceedings in State Court

#### 1.     *Indictment, guilty plea, and sentencing*

In 2016, Petitioner Brian Parks was indicted by a grand jury in the Circuit Court of Kanawha County, West Virginia ("circuit court") in Case No. 16-F-151 on charges related to a September 2015 incident in which Parks and three co-defendants robbed and beat Bryson Ward, who later died. (ECF No. 12-1). On May 5, 2016, Parks signed an agreement with the State of West Virginia, pursuant to which Parks agreed to plead guilty to a single count of first degree robbery and receive a determinate sentence of fifty years of confinement. (ECF No. 12-7). In exchange, the State agreed to dismiss a count of first degree murder against Parks. (*Id.*).

Parks entered his guilty plea on May 6, 2016 at a hearing before the circuit court. (ECF No. 12-2). When questioned by the circuit court, Parks stated that he understood the terms and conditions of the plea agreement and that he was aware that his sentence under the plea agreement would be a fifty-year term of incarceration. (*Id.* at 15–16). He further testified that his counsel had reviewed the State's evidence against him, discussed his available defenses, made an adequate and proper investigation of his case, and had prepared for trial. (*Id.* at 16–17). When asked if he was "completely satisfied" with his counsel's representation of him, Parks answered affirmatively. (*Id.* at 17). Parks confirmed that his counsel had discussed the rights he relinquished by pleading guilty, and told Parks that he would receive a sentence of at least ten years if he were convicted of first degree robbery at trial. (ECF No. 12-2 at 18–19). Parks affirmed that he had not

been "threatened, intimidated, coerced or pressured" into entering his guilty plea. He expressed satisfaction with the plea agreement, confirmed that he understood the rights he was waiving, and acknowledged that he was pleading guilty of his own free will. (*Id.* at 20, 24-28). Parks described the factual basis for his plea, stating, "I went up with my co-defendant, and I was in support of helping him beat up Bryson Ward and helped receive the goods." (*Id.* at 31). He further admitted that he had stolen drugs and cash from the victim. (*Id.*). After listening to Parks and counsel, the circuit court found that Parks "freely and voluntarily entered the plea with advice and consultation of competent counsel" and knowingly and voluntarily waived his rights with knowledge of the consequences of the plea. (*Id.* at 32–33).

On May 25, 2016, the day before sentencing, Parks filed a motion to withdraw his guilty plea. (ECF No. 12-8). In his motion, Parks explained that he felt he "made the wrong decision under the pressure of trial preparation, a succession of plea offers, and information he was receiving regarding his co-defendant's pleas," and emphasized the minimal role he played in the events related to the robbery. (*Id.* at 2–3). He claimed to have "a potential defense" to the robbery charge and expressed desire to be tried by a jury. (*Id.* at 3). At his sentencing hearing before the circuit court on May 26, 2016, Parks was given the opportunity to testify in support of the motion to withdraw his plea, but declined to do so. (ECF No. 12-9 at 4–7). The circuit court denied Parks's request to withdraw his guilty plea based on the record of the prior hearing. (*Id.* at 6–7; ECF No. 12-10). He was subsequently sentenced to fifty years' imprisonment. (ECF No. 12-9 at 12).

### 2.  *Direct appeal*

On June 22, 2016, Parks filed a notice of appeal with the Supreme Court of Appeals of West Virginia ("SCAWV"). (ECF No. 12-11). In his appellate brief, Parks, through

3

counsel, argued that the circuit court erred by denying his motion to withdraw the guilty plea. (ECF No. 12-12 at 5). According to Parks, his youth, lack of criminal history, and limited involvement in the crime provided a fair and just reason to allow withdrawal of the plea, and there was no evidence that the prosecution would have been prejudiced by the withdrawal of the plea a mere three weeks after its entry. (*Id.* at 8–9).

On June 16, 2017, the SCAWV issued a memorandum decision affirming the circuit court's denial of Parks's motion to withdraw. (ECF No. 12-14 at 37–39). The SCAWV found that, in view of Parks's admission that he participated in the robbery and the lack of additional evidence or testimony presented to indicate his innocence, the circuit court did not abuse its discretion when it refused to allow Parks to withdraw his guilty plea. (*Id.* at 39).

### 3.    *Petition for a writ of habeas corpus*

On November 13, 2017, Parks filed a petition for a writ of habeas corpus in the circuit court. (ECF No. 12-13 at 2). He was later appointed counsel, and through counsel filed an amended petition on October 1, 2018. (ECF No. 12-14 at 2). In his amended petition, Parks asserted four claims to show that he was denied his state and federal constitutional rights: (1) ineffective assistance of counsel lead him to "unknowingly and unintelligently" enter into the plea agreement, and counsel also failed to challenge the language of the indictment or request an investigator; (2) the circuit court abused its discretion by denying his request to withdraw his guilty plea; (3) his indictment was defective; and (4) he received a sentence that was excessive and more severe than expected. (*Id.* at 4–5). The circuit court held an omnibus hearing on the matter on January 10, 2019. (ECF No. 12-15). At the hearing, both Parks and his trial counsel offered testimony. (*Id.* at 10, 13, 39–40).

On April 16, 2019, the circuit court entered an order denying and dismissing Parks's petition. (ECF No. 12-17). The circuit court rejected Parks's ineffective assistance of counsel argument, finding that Parks did not show that his counsel's performance was deficient and that the outcome of the proceedings would have been different. (*Id.* at 29–30). As to Parks's claim that the circuit court abused its discretion by denying his motion to withdraw his guilty plea, the circuit court refused to readdress the issue, citing the "law of the case doctrine," which barred consideration of the claim as it was decided against Parks on direct appeal to the SCAWV. (*Id.* at 30–31). The circuit court rejected Parks's argument that the indictment in his criminal case was defective for failing to include the date that the crime took place or list the element of intent. (*Id.* at 37). The circuit court mentioned that the claim was waived for the purposes of the habeas proceeding, but nevertheless found the claim lacked merit because time was not essential to the offense and the language in the indictment was identical to language that was previously upheld by the SCAWV in a different case. (*Id.* at 37–39).

Further, the circuit court rejected Parks's argument that his sentence was more severe than expected, and was excessive. (*Id.* at 31). The circuit court pointed out that the fifty-year sentence was part of a binding plea agreement, and was precisely the sentence for which Parks had bargained. (*Id.* at 31–32). The circuit court added that Parks could not have been surprised by the sentence; particularly, when he was informed of the sentence in the plea, in the plea papers, and during the plea colloquy. Additionally, the circuit court noted, Parks expressed satisfaction with the plea agreement at the plea hearing. The circuit court also stated that the claim could be considered waived as Parks failed to raise it in his direct appeal, but nonetheless found that the sentence did not constitute cruel and unusual punishment. (*Id.* at 33–36).

### 4.     *Appeal from denial of petition*

Parks filed a notice of appeal on May 15, 2019. (ECF No. 12-18 at 2). He raised five assignments of error: (1) the circuit court abused its discretion by requiring Petitioner to appear by video conference at the omnibus hearing; (2) the circuit court abused its discretion in denying Petitioner's ineffective assistance of counsel claim; (3) the circuit court abused its discretion in denying Petitioner's claim regarding his motion to withdraw guilty plea; (4) the circuit court abused its discretion in denying relief based on the defective indictment; and (5) the circuit court abused its discretion in denying relief based on Petitioner's excessive sentence in violation of the Eighth Amendment. (ECF No. 12-19 at 6–7). In support of his arguments, he reiterated many of the same standards and factual background presented in the initial petition.

On July 30, 2020, the SCAWV issued a memorandum decision affirming the denial of Parks's habeas petition. *Parks v. Ames*, No. 19-0458, 2020 WL 4355274. The SCAWV determined first that Parks was not entitled to relief on the ground that he was required to attend the circuit court hearing by video call. *Id.* at *3. Next, the SCAWV rejected Parks's argument concerning ineffective assistance of counsel. *Id.* at *4. Relying on the standard enunciated by the Supreme Court of the United States ("Supreme Court") in *Strickland v. Washington*, 466 U.S. 668 (1984), and later adopted by the SCAWV in *State v. Miller*, 194 W. Va. 3 (1995), the SCAWV agreed with the circuit court's determination that the performance of Parks's trial counsel was not ineffective. *Id.* The SCAWV, addressing each of the bases of ineffective assistance asserted by Parks, agreed with the circuit court's finding that Parks's plea was knowing, voluntary, and understanding; that counsel's refusal to hire a private investigator was not deficient; and that counsel was not deficient for failing to file a motion for the circuit court to reconsider his sentence. *Id.*

6

The SCAWV also rejected Parks's claim that the circuit court abused its discretion when refusing to allow Parks to withdraw his guilty plea, finding that consideration of the issue was barred by the law of the case doctrine. *Parks*, 2020 WL 4355274, at \*4. The SCAWV addressed Parks's contention that the indictment was defective and agreed with the circuit court that the lack of a date did not render the indictment invalid, because time was not of the essence in the offense. *Id.* at \*4-\*5. The SCAWV also affirmed the circuit court's finding that failing to include the intent element in the indictment did not invalidate it, relying on West Virginia precedent where a similar challenge was presented and rejected. *Id.* at \*5 Finally, the SCAWV found unavailing Parks's argument that his sentence was excessive, emphasizing that Parks had received the fifty-year sentence for which he bargained and, thus, the sentence was a proper exercise of the circuit court's discretion. *Id.*

### B.    Federal Petition Under § 2254

Parks filed the instant petition for habeas relief under § 2254 on October 19, 2020. (ECF No. 2). Therein, he asserts four grounds for relief. In Ground One, Parks contends that his rights under the Fifth and Fourteenth Amendments were violated by the circuit court's denial of his motion to withdraw his guilty plea. (*Id.* at 4–5). He explains that he wanted to have a jury trial "due to having viable defenses to the crimes alleged related to his and his co-defendant's participation in the alleged crimes." (*Id.* at 4).

In Ground Two, Parks posits that his Sixth Amendment rights were violated because he did not receive the effective assistance of counsel. (*Id.* at 5). He includes three subgrounds in support of this point: (1) both trial and appellate counsel "failed to challenge the language of the indictment," which neglected to include the date of the alleged event or list the intent element; (2) trial counsel "failed to hire an investigator to

review the evidence and events" related to the case because counsel "did not feel that the case needed any further investigation"; and (3) trial counsel "failed to discuss the ramifications of the plea offer" with Parks, and this lack of communication made him feel "coerced into taking the plea agreement." (*Id.*).

In Ground Three, Parks claims that his indictment was defective under the Fifth, Sixth, and Fourteenth Amendments. (*Id.* at 6). He asserts that the lack of dates for the alleged crimes and absence of an intent element violated his rights to due process and confrontation. (*Id.*).

In Ground Four, Parks argues that his sentence is excessive in violation of the Eighth Amendment. (*Id.* at 7). He maintains that he has only minimal criminal history and had limited involvement in the alleged crime. (*Id.*). Parks contends that his fifty-year determinate sentence is disproportionate compared to the sentences of his three codefendants and when considering his level of involvement. (*Id.*).

On January 5, 2021, Respondent filed a Motion for Summary Judgment and a contemporaneous memorandum of law in support. (ECF Nos. 12, 14). In the memorandum, Respondent concedes that Parks's petition is timely and that each of his claims have been exhausted at the state level except for Parks's argument that his appellate counsel was ineffective, which Respondent asserts should be dismissed. (ECF No. 14 at 13–20). Respondent argues that Parks's remaining claims are meritless and should also be denied. (*Id.* at 20).

As to Ground One, Respondent counters Parks's position that his rights were violated by the circuit court's refusal to grant his motion to withdraw his guilty plea, arguing that Parks does not demonstrate that his rights were violated using the factors provided in *Duncil v. Kaufman*, 183 W. Va. 175 (1990) or *United States v. Moore*, 931

8

F.2d 245 (4th Cir. 1991). (*Id.* at 21–22). According to Respondent, Parks has failed to show that his plea was not knowing and voluntary, does not make a credible assertion of innocence given his admission to the offense conduct, delayed for some time between entering his plea and moving to withdraw, had close assistance of effective counsel, and while there is no evidence that the prosecution would have been prejudiced if Parks had been allowed to withdraw his plea, it would nevertheless have "inconvenienced the court and wasted judicial resources." (*Id.* at 22–24).

Addressing Ground Two, Respondent maintains that Parks's counsel was not ineffective under the *Strickland* standard. (*Id.* at 25). Respondent asserts that Parks's counsel was correct not to challenge the language in the indictment because the language was adequate and such a claim would have been frivolous. (*Id.* at 26–28). Respondent next refutes Parks's claim that counsel was deficient for failing to hire an investigator, noting that Parks "does not allege what exculpatory or otherwise useful evidence would have been uncovered" if counsel had hired a private investigator and failing to do so was not prejudicial. (*Id.* at 28–30). Further, Respondent asserts that Parks offers no evidence to support his claim that counsel did not discuss the ramifications of the plea agreement with him and coerced him into agreeing to the plea. (*Id.* at 30). Pointing to the transcript of Parks's plea hearing, in which Parks affirms that he was not coerced into the plea agreement and entered it of his own free will, Respondent further argues that there is no evidence to indicate that additional communication would have changed Parks's decision to plead guilty. (*Id.* at 30–31).

As to Ground Three, Respondent reiterates that the indictment was sufficient because it fairly apprised Parks of the crimes with which he was charged. (*Id.* at 31–32). With respect to Ground Four, Respondent argues that Parks's sentence was not

unconstitutional. (*Id.* at 33). According to Respondent, the sentence was no more severe than Parks expected, highlighting exchanges at the plea hearing where Parks affirmed knowledge of the plea agreement terms and the fifty-year sentence. (*Id.* at 33). Respondent contends that the sentence is not excessive because it fell within the statutory limit, was proportional to the crime, and was warranted by Parks's conduct. (*Id.* at 34–35). Respondent adds that Parks's sentence was proportionate to that of his codefendants given Parks's role in the crime. (*Id.* at 36–37).

On January 27, 2021, Parks filed an objection to Respondent's motion for summary judgment, along with an accompanying memorandum of law. (ECF Nos. 20, 21). In his memorandum, Parks sets forth a factual background contextualizing his participation in the robbery, explaining that he and one of his codefendants were pressured into committing the crime, which was planned in retaliation for an alleged sexual assault on another codefendant. (ECF No. 21 at 7–8). He also presents details about trial counsel's performance, asserting that counsel came to visit him "a grand total of three to four times" before Parks entered his plea, and that counsel did not investigate the defenses Parks may have had to the robbery charge. (*Id.* at 8–9). He explains that he was "forced" to plead guilty because he knew his trial counsel had not prepared adequately for trial. (*Id.* at 9).

Addressing Respondent's arguments, Parks agrees that his petition is timely and concedes that his claim concerning the deficiency of appellate counsel is procedurally defaulted, noting that it was a typographical error to include it. (*Id.* at 13). However, he objects to Respondent's motion for summary judgment because most of his claims have merit and summary judgment would be premature. (*Id.* at 13–14). As to Ground One, Parks admits that his plea was knowing and voluntary, but maintains that his plea was not made intelligently. (*Id.* at 14). He contends that "he only pled guilty and admitted to

10

hitting Mr. Ward because Defense Counsel mentioned it first," reasoning that counsel's statements at his plea hearing prevented him from "being able to credibly deny the allegations." (*Id.* at 15–16). Parks asserts that he has "a viable legal innocence claim" as there is no documentation of money or belongings recovered from him to substantiate the robbery charge and, regardless, any theft of property was an afterthought to the assault of Bryson Ward, which was done in retaliation for the rape. (*Id.* at 16). Parks also notes that on the form where he made statements in support of his guilty plea, under the question "Do you believe yourself to be guilty?" he wrote "Yes/No." (*Id.* at 16–17, ECF No. 12-3 at 7). He argues that the nineteen-day delay between his guilty plea and motion to withdraw was insignificant, and that courts have allowed withdrawal in other cases despite lengthier delays. (ECF No. 21 at 17). Parks disputes Respondent's argument that Parks conceded the effectiveness of counsel at the plea hearing, proffering that he "was not in a proper position to be answering that question" due to his lack of legal training and criminal justice system experience. (*Id.* at 17–18). He rejects Respondent's argument that his testimony at the plea hearing, acknowledging participation in the robbery, indicates that having a trial would not serve the interest of judicial economy, reiterating that he has a "legitimate legal innocence claim." (*Id.* at 18). Parks requests that the Court consider his hesitance to enter the plea and that he did not properly initial the form waiving his rights pursuant to the plea agreement. (*Id.* at 18–19).

Turning to Ground Two, Parks repeats his claim that his counsel was defective under the *Strickland* standard, stating that but for his counsel's errors, there was a reasonable probability that he would have declined the plea agreement and proceeded to trial. (*Id.* at 20–21). He reiterates his belief that the indictment was insufficient and that counsel should have challenged it, and that counsel's failure to challenge the indictment

or investigate made him feel as though "he had no other option *but* to take a plea." (ECF No. 21 at 21–22). Parks also faults counsel for allegedly failing to investigate his two potential defenses to the robbery charge: that Parks acted under duress and that taking the goods was an afterthought, thus negating the robbery charge "in favor a malicious assault and grand larceny." (*Id.* at 22). He argues that counsel's failure to investigate defenses prevented the prosecution's case from being subject to meaningful adversarial testing, and urges the Court to rely on *United States v. Cronic*, 466 U.S. 648 (1984) for its analysis of this claim rather than *Strickland*. (*Id.* at 23–25). Parks argues that his counsel's failure to investigate nevertheless satisfies the *Strickland* test, because Parks is not required to show that he would have won at trial, only that he would have taken his case to trial. (*Id.* at 26–27). Parks stresses the lack of communication he received from counsel and the infrequency of visits in support of the notion that his counsel was deficient. (*Id.* at 27–28).

Addressing Ground Three, Parks restates his argument that his indictment was defective because it did not list the intent element found in common law, and explains that a lack of a date for the crime on the indictment "makes it easier for him to be subject to double jeopardy." (ECF No. 21 at 19–20). As to Ground Four, Parks concedes that he has not established a constitutional violation related to the excessiveness of his sentence, but disputes the factual characterization supplied by Respondent. Parks claims that he was coerced into participating in the crime, making him less culpable than a co-defendant who received a shorter sentence than Parks. (*Id.* at 28–29).

Finally, Parks argues that summary judgment would be inappropriate in this case. (*Id.* at 29). He states that he has not had a chance to engage in discovery and does not possess supporting exhibits, listing many items he would request through discovery,

which he believes would support his petition. (ECF No. 21 at 29–30). Parks further argues that summary judgment should not be granted because "no Court has reviewed [his] claims in light of one another." (*Id.* at 30). He reasons that this Court "should look at the totality of the circumstances" and review his claims together. (*Id.* at 31).

On February 10, 2021, Respondent filed a reply in support of his motion for summary judgment. (ECF No. 23). He contends that Parks does not meet his evidentiary burden to show that the findings of the state courts were incorrect and objectively unreasonable by clear and convincing evidence. (*Id.* at 1–2). First, he again notes that Parks's claim concerning the ineffective assistance of appellate counsel is not exhausted, a point to which Parks has already agreed. (*Id.* at 2–3).

Next, Respondent argues that Parks does not show that a factual determination made by the circuit court was objectively unreasonable as to his motion to withdraw his guilty plea under the standard announced in *Duncil v. Kaufman*, 183 W. Va. 175 (1990) or *United States v. Moore*, 931 F. 2d 245 (4th Cir. 1991). (*Id.* at 3–4). Addressing the factors described in those decisions, Respondent cites Parks's own admission that there is no evidence that his plea was involuntary and unknowing. (*Id.* at 4). As to the second factor, Respondent argues that Parks has not credibly asserted his legal innocence because Parks provided no affidavit or other evidence in support of the assertion and "ample evidence in the state court records," including police reports and Parks's trial counsel, shows that Parks did assault the victim during the commission of the robbery. (*Id.* at 4–5). Respondent also disputes that the "Yes/No" answer Parks provided on his plea form when asked if he believed himself to be guilty is a credible assertion of innocence given that on the same form Parks also provided a description of "the specific acts he committed that fulfilled the elements of first degree robbery." (*Id.* at 5). Turning

13

to the third factor, Respondent reiterates that the nineteen-day delay between Parks's guilty plea and motion to withdraw the plea weighed against granting the motion. (ECF No. 23 at 6). Considering the fourth factor, Respondent states that there is no evidence that Parks's trial counsel was ineffective, and Parks's testimony at his plea hearing confirming his satisfaction with the representation he received is telling, regardless of Parks's lack of legal training or criminal background. (*Id.* at 6–7). Acknowledging that no evidence supports the fifth factor, which concerns prejudice to the government, Respondent argues that the sixth factor clearly supports denial of the motion to withdraw. (*Id.* at 7). He contends that at numerous instances, Parks admitted to participating in the robbery, and therefore allowing him to withdraw his plea and proceed to trial would have wasted judicial resources. (*Id.* at 7–9).

As to Ground Two, Respondent refutes Parks's assertion that his trial counsel was ineffective for failing to challenge the indictment because such a claim would have been frivolous. (ECF No. 23 at 10). He also notes that Parks provides only a bald assertion in support of his claim that trial counsel was deficient for failing to investigate his claims "without presenting any concrete evidence in support." (*Id.* at 10–11). Respondent similarly asserts that Parks has provided only bald allegations that his trial counsel failed to discuss the ramifications of his plea offer or otherwise coerced him into entering the plea agreement. (*Id.* at 12). Turning to Ground Three, Respondent counters Parks's claim that the indictment was insufficient, arguing that it was not necessary to list the exact date of the crime or the intent element on the charging document. (*Id.* at 12–14). Finally, with respect to Ground Four, Respondent notes that Parks concedes to dismissal of this ground on the basis that his sentence does not violate the Constitution. (*Id.* at 14–15).

Respondent contends that summary judgment is not premature here as Parks has not established a *prima facie* case for relief and is not entitled to discovery in this matter. (*Id.* at 15). Further, Respondent posits that the Court is capable of reviewing Parks's claims on the record available and discovery is not necessary to resolve his meritless claims. (*Id.* at 16). Respondent concludes by again asking the Court for summary judgment in his favor. (*Id.*).

## II.  **Standard of Review**

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in State custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When determining the merits of a § 2254 petition, the district court applies the standard set forth in § 2254(d), which provides that the habeas petition of a person in State custody "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim" is:

(1) contrary to, or involves an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Moreover, the factual determinations made by the state court are presumed to be correct and are only rebutted upon presentation of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Thus, when reviewing a petition for habeas relief, the federal court uses a "highly deferential lens." *DeCastro v.*

*Branker*, 642 F.3d 442, 449 (4th Cir. 2011).

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." *Thomas v. Davis*, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have separate and independent meanings. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." *Lewis v. Wheeler*, 609 F.3d 291, 300 (4th Cir. 2010) (quoting *Williams*, 529 U.S. at 405) (internal quotations omitted). The district court may grant a habeas writ under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case." *Id.* at 300–01 (internal marks omitted).

Accordingly, the AEDPA limits the federal habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision. A federal court may not issue a writ under this standard "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather the application must also be unreasonable." *Williams*, 529 U.S. at 365.

Here, Respondent moves for summary judgment. (ECF No. 12). Summary judgment under Rule 56 of the Federal Rules of Civil Procedure "applies to habeas proceedings." *Brandt v. Gooding*, 636 F.3d 124, 132 (4th Cir. 2011) (quoting *Maynard v.*

*Dixon*, 943 F.2d 407, 412 (4th Cir. 1991)). The Court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact or facts are material if they constitute a legal defense, or if their existence or nonexistence might affect the result of the action, or if the resolution of the issue they raise is so essential that the party against whom it is decided cannot prevail." Charles Alan Wright, Arthur R. Miller &, Mary Kay Kane, *Federal Practice and Procedure*: *Civil* § 2725 (3d ed. 2005). On the other hand, a fact is not material when it is of no consequence to the outcome, or is irrelevant in light of the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Assertions of material facts must be supported by "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In addition, only genuine disputes over material facts "will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A dispute is "genuine" when "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party." *Cox v. Cty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001) (citing *Anderson*, 477 U.S. at 248).

Motions for summary judgment impose a heavy burden on the moving party, as it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *See Miller v. F.D.I.C.*, 906 F.2d 972, 974 (4th Cir. 1990). Nonetheless, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson,* 477 U.S. at 252. While any

permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477 U.S. at 249–50).

## III. <u>Discussion</u>

In his petition, Parks presents four grounds for relief and requests discovery to further substantiate his claims. Based on the following analysis, it is clear that Parks is not entitled to relief. In order to resolve this matter, each ground will be addressed in turn, followed by Parks's request for discovery.

### A.    Ground One: Denial of Motion to Withdraw Guilty Plea

Parks claims that his Fifth and Fourteenth Amendment rights were violated by the circuit court's denial of his motion to withdraw his guilty plea. (ECF No. 2 at 4–5). A guilty plea involves a waiver of constitutional rights, including Sixth Amendment rights to be tried by a jury and confront accusers and the Fifth Amendment right not to be compelled to make self-incriminating statements. *Brady v. United States*, 397 U.S. 742, 748 (1970). Thus, for a guilty plea to pass muster under the Constitution, it must be voluntary, knowing, and intelligent, "with sufficient awareness of the relevant circumstances and likely consequences." *Id.*; *see also McMann v. Richardson*, 397 U.S. 759, 770 (1970). However, once made, "[a] defendant has no 'absolute right' to withdraw" the guilty plea. *United States v. Bowman*, 348 F.3d 408, 413 (4th Cir. 2003) (quoting *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir.2000)); *see also United States v. Hyde*, 520 U.S. 670, 676 (1997) (holding that defendants do not hold a right to withdraw an accepted guilty plea, even before the underlying plea agreement has been accepted). Just as in

18

federal district courts, in West Virginia, circuit courts are afforded discretion under Rule 32(e) to allow withdrawal of a guilty plea prior to sentencing "if the defendant shows any fair and just reason." West Virginia relies on several factors to guide the application of this discretion, which are described in *Duncil v. Kaufman*, 183 W. Va. 175 (1990) and are similar to the factors considered by the Fourth Circuit in *United States v. Moore*, 931 F.2d 245 (4th Cir. 1991).

Parks contends that his plea was knowing and voluntary, but denies that it was made intelligently. (ECF No. 21 at 14). A defendant enters a guilty plea intelligently when he is "advised by competent counsel," "made aware of the nature of the charge against him, and there was nothing to indicate that he was incompetent or otherwise not in control of his mental faculties." *Brady*, 397 U.S. at 756. At his plea hearing, the circuit court engaged in a colloquy with Parks, asking him a series of questions to establish that he understood his decision to plead guilty. The circuit court and counsel reviewed the charges against Parks, as well as the burden on the prosecution, and the rights that would be waived if a guilty plea were entered. The circuit court found that Parks "freely and voluntarily entered the plea with advice and consultation of competent counsel" and knowingly and voluntarily waived his rights with knowledge of the consequences. (ECF No. 12-2 at 32–33). In addition, the circuit court investigated whether Parks was competent and capable to enter a guilty plea, asking questions of both Parks and his counsel. (Id. at 21-23). The circuit court denied Parks's later motion to withdraw, noting that Parks presented no evidence of a fair and just reason to withdraw the plea, which had been "freely and voluntarily tendered ... with advice and consultation of competent counsel," and that accordingly Parks had knowingly and willingly waived his right to a jury trial. (ECF No. 12-10).

Parks raised the issue on his direct appeal, arguing that his youth, lack of criminal history, and limited participation in the crime provided a fair and just reason to allow withdrawal of the plea. He added that there was no evidence that the prosecution would have been prejudiced by the withdrawal of the plea a mere three weeks after its entry. (ECF No. 12-12 at 8–9). The SCAWV rejected this argument and found that the circuit court did not abuse its discretion by refusing to allow Parks to withdraw his guilty plea given Parks's admission that he participated in the robbery, as well as the lack of additional evidence or testimony presented to indicate his innocence. (ECF No. 12-14 at 37–39).

A writ of habeas corpus under § 2254 is available if the state court decision is contrary to or an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States" or involves an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). The issue at hand is whether the SCAWV's decision to uphold the circuit court's denial of the motion to withdraw was unreasonable. The parties have each offered a thorough examination of the circuit court's denial of Parks's motion using the factors from *United States v. Moore*. While the arguments contained in the factor-based analysis are useful for discerning the parties' positions, the factors themselves are not central to this Court's analysis of Parks's claim because *Moore* is a case from the Fourth Circuit, not the Supreme Court, and thus does not represent "clearly established Federal law" pursuant to § 2254.

As already noted, Parks had no absolute right to withdraw his guilty plea so long as it was knowingly, voluntarily, and intelligently given. A guilty plea "frequently involves the making of difficult judgments." *McMann v. Richardson*, 397 U.S. 759, 769 (1970). The SCAWV was not unreasonable to find that the guilty plea was valid based on the colloquy

at Parks's plea hearing, which established that Parks possessed the requisite mental state to enter his plea. *See, e.g., Beck v. Angelone*, 173 F. Supp. 2d 461, 480 (E.D. Va.), *report and recommendation adopted*, 113 F. Supp. 2d 941 (E.D. Va. 2000) (relying on plea colloquy to support finding that guilty plea was validly entered); *Stokes v. Slayton*, 340 F. Supp. 190, 192 (W.D. Va. 1972), *aff'd*, 473 F.2d 906 (4th Cir. 1973) (same). While Parks argued that he wished to take his case to trial because he had a possible defense, the Supreme Court has found "no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought." *Brady*, 397 U.S. at 757. Although Rule 32(e) of the West Virginia Rules of Criminal Procedure allows circuit courts to grant motions to withdraw guilty pleas if the defendant presents a fair and just reason to do so, finding a fair and just reason is a factual determination entitled to significant deference from this Court under § 2254(e) absent clearly convincing evidence that the factual determination is incorrect. The SCAWV's finding that Parks did not present a reason for withdrawal, which would have permitted the circuit court to exercise its discretion and possibly grant the motion, was not unreasonable given that there was no further information in the record at the time of its decision besides what was available when the plea was entered. Therefore, the undersigned **FINDS** that the decision of the SCAWV was not contrary to established federal law and was not an unreasonable application of law or determination of facts; accordingly, Parks is not entitled to relief on this ground.

### B.    Ground Two: Ineffective Assistance of Counsel

Parks claims that he did not receive effective counsel in violation of the Sixth Amendment because (1) both trial and appellate counsel "failed to challenge the language

of the indictment prior to trial" on the basis that the indictment did not include the date of the alleged event or list the intent element; (2) trial counsel "failed to hire an investigator to review the evidence and events" related to the case because counsel "did not feel that the case needed any further investigation"; and (3) trial counsel "failed to discuss the ramifications of the plea offer" with him, and this lack of communication made him feel "coerced into taking the plea agreement." (ECF No. 2 at 5).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). While "assistance which is ineffective in preserving fairness does not meet the constitutional mandate . . . defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor*, 535 U.S. 162, 166 (2001). To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88, 694. When reviewing counsel's performance, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690. Moreover, counsel's performance should be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time," and a court should not allow hindsight to alter its review. *Wiggins v. Smith*, 539 U.S. 510, 523 (2003). In addition, trial strategy devised after investigating the law and facts is "virtually unchallengeable." *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995). The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. *Goodson v.*

22

*United States*, 564 F.2d 1071, 1072 (4th Cir.1977).

As Parks raises his claims of ineffective assistance of counsel in a § 2254 petition, his claims must overcome both the *Strickland* standard and the barrier imposed by § 2254(d), resulting in review that is "doubly" deferential to the decision of the state court. *Knowles v. Mirzayance*, 556 U.S. 111, 129 (2009). In *Harrington v. Richter*, the Supreme Court made clear that relief in these circumstances should be granted only sparingly. *Harrington,* 562 U.S. 86, 102 (2011). In *Harrington,* the Supreme Court reviewed and reversed a decision by the Ninth Circuit to grant relief to a petitioner raising ineffective assistance of counsel claims in a § 2254 petition. *Id.* The *Harrington* Court clarified that the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Id.* at 101. A state court's determination that trial counsel was not defective cannot be overturned in federal habeas review unless "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. This standard of review recognizes that for the "purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id.* at 101 (quoting *Williams,* 529 U.S. at 410). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Habeas review under § 2254(d) is intended to function as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 102-03.

Likewise, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Even under *de novo* review, the standard for judging

counsel's representation is a most deferential one." *Harrington*, 562 U.S. at 105. It is not enough that trial counsel's performance may have "deviated from best practices or most common custom" as "the question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms.'" *Strickland*, 466 U.S., at 690. Thus, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington,* 562 U.S. at 102, 105. To succeed in establishing his claim of ineffective assistance of counsel, Parks must satisfy this demanding standard articulated by the Supreme Court.

Parks notes that his reference to appellate counsel in subground 1 was a typographical error, (ECF No. 21 at 13), and therefore the undersigned will not consider it, as such a claim is clearly not exhausted. His other contentions concerning trial counsel's performance are addressed in turn.

### 1. *Failure to challenge the language of the indictment*

Parks argues that his counsel was ineffective for failing to challenge the language of the indictment, which lacked the "intent element anticipated by the common law definition of robbery" and "does not contain the dates of the events alleged." (ECF No. 2 at 5). The SCAWV, reviewing the denial of Parks's state habeas petition, declined to address Parks's claim that his counsel was ineffective for failing to challenge the indictment, because the indictment was not deficient. *Parks v. Ames*, No. 19-0458, 2020 WL 4355274, at *4 (W. Va. July 30, 2020). It was clearly not unreasonable for the SCAWV to rule that counsel's failure to challenge the indictment did not constitute ineffective assistance when the underlying claim lacked merit. *Beamon v. United States*, 189 F. Supp. 2d 350, 357 (E.D. Va. 2002) ("[T]here can be no deficient performance or prejudice to the

defendant in counsel's failure to argue meritless issues at trial, sentencing, or on appeal."). While the sufficiency of the indictment is more fully examined below, the undersigned **FINDS** that the conclusion reached by the SCAWV was not contrary to established federal law and was not an unreasonable application of law or determination of facts; accordingly, Parks is not entitled to relief on this ground.

### 2.    *Failure to investigate*

In his initial petition, Parks asserts that his counsel was ineffective for failing to "hire an investigator" to review the evidence and events. (ECF No. 2 at 5). Later, he explains that "[t]he issue is not so much that [counsel] failed to hire someone, but that he failed to investigate period." (ECF No. 21 at 27). Under *Strickland*, counsel "has a duty to make reasonable investigations. ... [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691. "To prevail on an [ineffective assistance of counsel] claim based on a failure to investigate, a petitioner must specify 'what an adequate investigation would have revealed.'" *Walton v. Ballard*, No. 2:15-CV-11423, 2018 WL 1582737, at *7 (S.D.W. Va. Mar. 30, 2018), *appeal dismissed*, 738 F. App'x 159 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 2743 (2019) (quoting *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990)). "An allegation that an attorney conducted an inadequate investigation does not warrant relief absent a proffer of the specific favorable evidence the investigation would have brought out." *Campbell v. United States*, No. 5:07-cv-0120, 2009 WL 6327477, at *11 (S.D.W. Va. Nov. 6, 2009) (citations omitted), *report and recommendation adopted*, No. CIVA 5:07-0120, 2010 WL 1379992 (S.D.W. Va. Mar. 31, 2010).

In his appeal to the SCAWV from the denial of his state habeas petition, Parks

argued simply that "he requested trial counsel hire an investigator to review the evidence and events of the night of the incident" and that "trial counsel refused to request an investigator because he did not feel that the case needed any further investigation." (ECF No. 12-19 at 11). The SCAWV rejected this argument, holding that the circuit court did not abuse its discretion by relying on the "testimony of counsel that he did not hire an independent investigator because his office employs in-house investigators." *Parks*, No. 19-0458, 2020 WL 4355274, at *4. Parks did not advance in his appeal to the SCAWV— nor does he explain here—what specific evidence would have been revealed by a more thorough investigation; thus, the SCAWV never further addressed such claims.

In this matter, Parks posits that "some legal research and questioning of co-defendants would have revealed that the robbery was an afterthought" and was "committed under duress," thus indicating that he was "factually innocent" of the crimes with which he was charged. (ECF No. 21 at 27). However, exactly what Parks believes would have been uncovered by questioning his codefendants, or conducting legal research, beyond that which was already available in the evidentiary record remains a mystery. Parks himself supports his claim that he acted under duress by citing to the State's description of text messages exchanged between his codefendants that imply that Parks was threatened with physical harm prior to participating in the robbery and the threatening codefendant was "a very sizable person" who could have hurt him. (ECF No. 21 at 8). As part of the evidentiary record, Parks's counsel and the prosecution were no doubt aware of the text messages and the physical stature of Parks's codefendant and bargained for the plea agreement with knowledge of the potentially mitigatory value of such evidence. He offers no clue as to what other relevant evidence would have turned up, had counsel conducted further investigation, that would support a finding of prejudicial

26

deficiency in the instant case.

As to Parks's assertion that an investigation would have revealed that the "decision to take money or goods came after the assault" and therefore counsel should have argued for a lesser-included offense, he similarly does not explain what evidence would have been found beyond what was readily available to support the argument. (ECF No. 21 at 23). "The reasonableness of an investigation made by counsel must be evaluated under the totality of the circumstances facing the attorney," and even when counsel could have made a more thorough investigation, in considering claims of ineffective assistance of counsel, the court considers "not what is prudent or appropriate, but only what is constitutionally compelled." *Campbell*, 2009 WL 6327477, at *11 (internal citations and quotation marks omitted). Parks fails to show that his trial counsel's performance was deficient, or that the lack of additional research and investigation was prejudicial. Therefore, the undersigned **FINDS** that the decision of the state courts to deny this claim was not contrary to established federal law and was not an unreasonable application of law or determination of fact. As such, Parks is not entitled to relief on this ground.

### 3.    *Failure to discuss ramifications of plea agreement*

Parks next contends that his counsel was ineffective by failing to discuss with him the ramifications of the plea agreement. He states that counsel's lack of communication about the plea agreement made him feel coerced into accepting it. (ECF No. 2 at 5). Parks argued this issue to the SCAWV on appeal from the denial of his state habeas petition, similarly asserting that "the pressures of preparing for trial, multiple plea offers, and discussions involving his co-defendants' pleas," along with a "lack of communication" with his trial counsel, compelled him to accept the plea agreement. (ECF No. 12-19 at 10). The SCAWV rejected his claim, noting that the circuit court "made detailed findings of

fact as to trial counsel's explanation to petitioner of the terms of the plea agreement." *Parks*, No. 19-0458, 2020 WL 4355274 at *4. Indeed, the record shows that the circuit court reached its decision by relying on the sworn testimony Parks provided at his plea hearing, which demonstrated his awareness and understanding of the terms and consequences of the plea agreement. (ECF No. 12-17 at 29–30).

Parks argues that he would not have entered into the plea agreement if his counsel had "stressed the point that [he] would not have been parole eligible for 12½ years." (ECF No. 21 at 28). As an initial matter, the undersigned notes that Parks did not argue that counsel neglected to communicate about parole eligibility when he appealed the circuit court's denial of his habeas petition; therefore, the SCAWV did not consider this specific contention in its review of Parks's claim. However, insofar as this contention is part and parcel of Parks's claim that counsel did not fully explain the terms of the plea agreement, it plainly does not entitle Parks to relief. Parks does not contend that counsel entirely failed to discuss parole eligibility with him, or otherwise misrepresented the ramifications of his plea agreement; he only alleges that counsel did not "stress" the timing of parole eligibility in such discussions. Parks signed a binding plea agreement wherein he forfeited his constitutional rights and agreed to a fifty-year sentence. At the plea hearing, before Park's guilty plea was accepted and during his counsel's proffer as why the agreed-upon sentence was appropriate, counsel explicitly stated that Parks would have to serve a fourth of his 50-year sentence before being eligible for parole. (ECF No. 12-2 at 13-14). Parks was present and certainly heard his counsel's statement; yet, Parks did not do or say anything to communicate surprise or distress at the length of time he would have to serve before being parole eligible. Failure to "emphasize" the date of parole eligibility in these circumstances simply does not constitute ineffective assistance of counsel. In any event,

a lack of awareness of parole eligibility does not negate the knowing, voluntary, and intelligent nature of a valid guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) ("We have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary, and indeed such a constitutional requirement would be inconsistent with the current rules of procedure governing the entry of guilty pleas in the federal courts.").

Parks maintains that counsel's failure to visit him to discuss trial strategy, coupled with counsel's supposed lack of investigation, undermined his confidence in counsel's ability to represent him at trial and "coerced [him] into signing a plea agreement that he was hesitant to enter into in the first place." (ECF No. 21 at 28). While Parks's personal appraisal of his counsel's ability to adequately represent him may have influenced his decision to enter into the plea agreement, such apprehension, without a showing of objectively unreasonable representation, does not render counsel's performance constitutionally ineffective or the plea somehow involuntary. Moreover, while Parks now claims he lacked confidence in his counsel's ability to represent him at trial, he made no mention of dissatisfaction when directly asked at his plea colloquy. (ECF No. 12-2 at 16–19). Parks claims that, at the time, he was not in a proper position to provide an accurate assessment of his attorney's performance, (ECF No. 21 at 17–18); however, the inquiry under *Strickland* does not rely on hindsight but instead considers the circumstances at the time of the supposedly deficient performance. *Wiggins v. Smith*, 539 U.S. 510, 523 (2003). It was not unreasonable for the SCAWV to rule that trial counsel's communication was not deficient based on the sworn statements Parks provided at his plea hearing. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Therefore, the undersigned **FINDS** that Parks is not

entitled to relief on this basis and further **FINDS** that Parks has not established that the SCAWV's ruling was clearly contrary to existing federal law, was an unreasonable application of the *Strickland* standard, or was an unreasonable determination of facts.

### C.    Ground Three: Sufficiency of the Indictment

Parks argues that the indictment for first-degree robbery in his case was defective because it did not contain the essential element of intent or provide a date for the crimes alleged. (ECF No. 2 at 6). The indictment charged that Parks and his codefendants "did unlawfully and feloniously commit violence by striking and beating" Bryson Ward and "then and there feloniously and violently did steal, take and carry away" a "Black Nike duffel bag and approximately eleven thousand dollars ($11,000.00) in lawful U.S. currency," which exceeded the value of $1,000.00. (ECF No. 12-1 at 2).

On habeas review, the SCAWV acknowledged that "[a]nimus furandi, or the intent to steal or to feloniously deprive the owner permanently of his property, is an essential element in the crime of robbery." *Parks*, No. 19-0458, 2020 WL 4355274, at *5 (W. Va. July 30, 2020) (internal citations and quotation marks omitted). Given that the indictment alleged that Parks "feloniously committed violence on the victim's person and 'then and there feloniously and violently did steal, take[,] and carry away' specified items of his property," the SCAWV concluded that Parks's indictment for first-degree robbery "met minimal constitutional standards and charged an offense under West Virginia law." *Id*. As to the absence of a specific date for the crimes alleged in the indictment, the SCAWV rejected Parks's argument on the basis that he did not assert that time was "of the essence for this offense." *Id*.

"The Fifth Amendment requirement of indictment by grand jury does not apply to the states, and thus variances and other deficiencies in state court indictments are not

30

ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the petitioner's right to due process." *Navarrete-Garcia v. McCoy*, No. 1:14-CV-00754, 2015 WL 4924619, at *2 n.5 (M.D.N.C. Aug. 18, 2015) (quoting *Hartman v. Lee,* 283 F.3d 190, 195 n.4 (4th Cir. 2002) and *Ashford v. Edwards,* 780 F.2d 405, 407 (4th Cir. 1985)); *Hinnant v. North Carolina*, No. 5:15-HC-2283-FL, 2016 WL 8653490, at *4 (E.D.N.C. June 27, 2016), *appeal dismissed,* 678 F. App'x 158 (4th Cir. 2017); *Horn v. Ballard*, No. 1:07-CV-00503, 2009 WL 915022, at *21 (S.D.W. Va. Feb. 26, 2009), *report and recommendation adopted in part,* 2009 WL 914879 (S.D.W. Va. Mar. 31, 2009). "The general rule is that the scope of review of a challenged indictment in federal courts upon habeas corpus proceedings is confined to the questions of whether the alleged defects go to the jurisdiction of the trial court or deprive the defendant of the right to be sufficiently informed of the charges against him." *Mechling v. Slayton*, 361 F. Supp. 770, 773 (E.D. Va. 1973); *Munday v. Ballard*, No. 5:12CV135, 2013 WL 3990785, at *12 (N.D.W. Va. Aug. 2, 2013) ("It is clearly established federal law that an indictment is sufficient under the United States Constitution if it, "first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense [...] Furthermore, the sufficiency of a state charging instrument 'is not a matter for federal habeas corpus relief unless the indictment is so defective that the convicting court had no jurisdiction.'") (quoting  *Hamling v. United States,* 418 U.S. 87, 117 (1974) and *Williams v. Collins,* 16 F.3d 626, 637 (5th Cir. 1994), *cert. denied,* 512 U.S. 1289 (1994)).

Parks fails to assert a basis for federal habeas relief. His indictment corresponded to the language of the West Virginia robbery statute and common law. W. Va. Code § 61-

2-12(a)(1) (2000) ("Any person who commits or attempts to commit robbery by: Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years."); *Wilkerson*, 738 S.E.2d at 37 (defining robbery as "(1) the unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with intent to steal the money or goods.").

Parks was reasonably informed of the specific charge against him and the indictment in his case was not so fatally flawed such as to deprive the trial court of jurisdiction, or render Parks's trial fundamentally unfair. *See, e.g., Horn*, 2009 WL 915022, at *21 (holding that the habeas petitioner's state indictment satisfied the requirements of due process by adequately informing him of the specific charge against him and "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished" by using the language of the statute itself); *Munday*, 2013 WL 3990785, at *12 (holding that the indictment was not "so fatally defective that under no circumstances could a valid conviction result from facts provable under the indictment.") (quoting *Johnson v. Estelle,* 704 F.2d 232, 236 (5th Cir.1983)); *Hinnant*, 2016 WL 8653490, at *4 (holding that the state court indictment did not render the state court proceeding fundamentally unfair and thus did not warrant habeas relief). The indictment suffices to meet the minimum constitutional requirements. Therefore, the undersigned **FINDS** that the decision of the SCAWV was not contrary to established federal law and was not an unreasonable application of law or determination of facts; accordingly, Parks is not entitled to relief on

this ground.

### D.    Ground Four: Excessive, Disproportionate Sentence

Parks argues in his initial petition that his sentence is excessive in violation of the Eighth Amendment. (ECF No. 2 at 7). In his objection to Respondent's motion to dismiss, Parks concedes that he is not entitled to relief on this ground. (ECF No. 21 at 28–29). The undersigned accordingly **FINDS** that Parks's claim concerning the excessiveness of his sentence is abandoned, and Respondent is entitled to summary judgment on this ground.

### E.    Request for Discovery

Parks requests discovery to substantiate his claims. (ECF No. 21 at 29–30). "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Because Parks is clearly not entitled to relief in this matter, the undersigned finds that his request for discovery should be **DENIED** as moot.

## IV.    <u>Proposal and Recommendations</u>

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the presiding District Judge **DENY** Petitioner's habeas petition, (ECF No. 2), and request for discovery, (ECF No. 21), and **GRANT** Respondent's Motion for Summary Judgment, (ECF No. 12), **DISMISS** this case, and **REMOVE** it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, The parties shall have fourteen days (filing of objections) and three days (if received by mail)

from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Johnston, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED:**  March 25, 2021

Cheryl A. Eifert
United States Magistrate Judge