**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

BRIAN PARKS,

                         Petitioner,

v.                                                              CIVIL ACTION NO.   2:20-cv-00691

DONALD F. AMES, Superintendent,

                         Respondent.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Proposed Findings and Recommendation ("PF&R"), (ECF No. 24), on Respondent Donald Ames's ("Respondent") Motion for Summary Judgment.   (ECF No. 12.)   Further pending before the Court is Petitioner Brian Parks's ("Petitioner") Objections to the PF&R.   (ECF No. 28.)   For the reasons more fully explained below, Petitioner's objections are **OVERRULED**, the PF&R is **ADOPTED** in its entirety, the Respondent's Motion for Summary Judgment is **GRANTED**, and Petitioner's Petition for a Writ of Habeas Corpus, (ECF No. 2), is **DENIED**.

*I.    BACKGROUND*

A detailed recitation of the factual and procedural background of this matter is found in the PF&R and thus need not be repeated here.   At issue in this petition, brought pursuant to 28 U.S.C. § 2254, are the following grounds for relief, raised by Petitioner:

> 1) Petitioner was denied Due Process Rights guaranteed by the 6th Amendment and 14th Amendment in the United States Constitution and Article 3 § 10 of the West Virginia Constitution because of ineffective assistance resulting in Petitioner unknowingly and unintelligently entering

into a plea agreement, failing to challenge the language of the indictment, and failing to request an investigator[.]

2) Petitioner was denied Due Process rights guaranteed by the 5th Amendment, 6th Amendment, and 14th Amendment in the United States Constitution and Article 3 § 10 of the West Virginia Constitution By [*sic*] the Court abusing its discretion in precluding Petitioner from withdrawing his guilty plea and proceeding to trial[.]

3) Petitioner was denied Due Process Rights guaranteed by the 5th Amendment, 6th Amendment, and 14th Amendment in the United States Constitution and Article 3 § 10 of the West Virginia Constitution due to Petitioner's conviction based on a defective indictment.

4) Petitioner was denied Due Process Rights and protection from cruel and unusual punishment guaranteed by the 5th Amendment, 6th Amendment, and 14th Amendment in the United States Constitution and Article 3 § 10 of the West Virginia Constitution by receiving a severer sentence than expected and an excessive sentence[.]

(ECF No. 2 at 2–3.)

Petitioner filed the instant petition on October 19, 2020.   (*Id.*)   By Standing Order entered October 21, 2020, this matter was referred to Magistrate Judge Cheryl Eifert for submission of proposed findings of fact and a recommendation for disposition.   (ECF No. 5.)   On January 5, 2021, Respondent filed his Motion for Summary Judgment.   (ECF No. 12.)   Petitioner filed his response in opposition on January 27, 2021, in which he also submitted a request to the Court to engage in discovery.   (ECF No. 20.)   Respondent filed his reply on January 27, 2021.   (ECF No. 23.)   Magistrate Judge Eifert submitted the PF&R on March 25, 2021.   (ECF No. 24.) Following an extension of the deadline to file his objections, Petitioner filed said objections to the PF&R on April 19, 2021.   (ECF No. 27.)

## II.   LEGAL STANDARD

### A.  Review of Magistrate Judge's Findings and Recommendations

The Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).   However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   In addition, this Court need not conduct a de novo review when a plaintiff "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In reviewing those portions of the PF&R to which Plaintiff has objected, this Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

### B.  Habeas Corpus Standard of Review

A federal court may grant habeas relief for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).   "Therefore, when a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review."   *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999), *aff'd*, 528 U.S. 225 (2000).

Section 2254(d), as modified by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides for a deferential standard of review to be applied to any claim that was

"adjudicated on the merits" in state court proceedings. In such a case, a federal court may grant habeas relief only if the adjudication of the claim in state court

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d)(1) describes the standard of review to be applied to claims challenging how the state courts applied federal law. "A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* The latter inquiry focuses on whether the state court's application of clearly established federal law was "unreasonable," as distinguished from whether it was "correct." *See Renico v. Lett*, 559 U.S. 766, 773 (2010); *Bell*, 535 U.S. at 694; *Williams v. Taylor*, 529 U.S. 362, 410 (2000). Section 2254(d)(2) describes the standard to be applied to claims challenging how the state courts determined the facts. "[A] determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims

that were decided in state court, albeit in a summary fashion." *Thomas v. Taylor*, 170 F.3d 466, 475 (4th Cir. 1999); *see also Harrington v. Richter*, 562 U.S. 86, 98 (2011) (recognizing that § 2254(d) applies even if the state court issued a summary decision unaccompanied by an explanation). The state court determination will be upheld so long as "fairminded jurists could disagree" on its correctness. *Yarbrough v. Alvarado*, 541 U.S. 652, 664 (2004).

### C. Summary Judgment

Rule 12 of the Rules Governing Section 2254 Cases ("Habeas Corpus Rules") states that the "Federal Rules of Civil Procedure, to the extent they are not inconsistent with any statutory provisions or these rules," are applicable to habeas corpus proceedings. Summary judgment, therefore, may be appropriate in federal heabeas corpus cases and allows a court to assess the need for an evidentiary hearing. *See Blackledge v. Allison*, 431 U.S. 63, 81 (1977). Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Under this well-known standard, the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citation omitted)).

The standard of viewing the evidence in the light most favorable to the nonmoving party, however, conflicts with § 2254(e)(1)'s dictate that a state court's factual determinations are presumed correct and may only be rebutted by clear and convincing evidence. *See Gentry v. Sinclair*, 576 F.Supp.2d 1130, 1140 (W.D. Wash. 2008). Accordingly, the requirements of 28

U.S.C. § 2254(e) trump Rule 56 to the extent that the summary judgment standard conflicts with the AEDPA.  *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) ("While, as a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases, the rule applies only to the extent that it does not conflict with the habeas rules. Therefore, § 2254(e)(1)—which mandates that findings of fact made by a state court are 'presumed to be correct'—overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.") (internal citation and quotation marks omitted), *abrogated on other grounds by*, *Tennard v. Dretke*, 542 U.S. 274, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004); *see also Haight v. Parker*, Civ. Action No. 3:02-CV-206-S, 2015 WL 13548182 at *13 (W.D. Ky. July 17, 2015); *Gentry*, 576 F.Supp.2d at 1140. "[W]hile those facts tending to demonstrate the unconstitutionality of state custody are material, due to the statutory presumption of correctness, the petitioner faces a comparatively higher burden in establishing the genuineness (or hearing worthiness) of contested facts."  *Haight*, 2015 WL 13548182 at *13 (quoting *Hauck v. Mills*, 941 F.Supp. 683, 687 (M.D. Tenn. 1996)).   While cognizant of the tension between the provisions of the AEDPA, Habeas Corpus Rule 12, and the summary judgment standard, the Court finds that summary judgment is appropriate in this matter.

### III.    DISCUSSION

Petitioner has raised four objections to the PF&R.   First, Petitioner argues that the PF&R applies the incorrect standard to his ineffective assistance of counsel claim, regarding Petitioner's accusation that his trial counsel failed to investigate.   (ECF No. 28 at 5.)   Next, Petitioner contends that the PF&R unreasonably applied "the waiver doctrine" to his ineffective assistance

of counsel claims.  (*Id.* at 10.)  Then, Petitioner argues that the PF&R's finding that his guilty plea was intelligently made was erroneous and based on an unreasonable application of clearly established federal law.  (*Id.* at 12.)  Finally, Petitioner asserts that the denial of his request for discovery was an unreasonable application of clearly established federal law.  (*Id.* at 13.)  The Court takes up each objection in turn.

### A.  Ineffective Assistance of Counsel Standard

First, Petitioner argues that the PF&R erroneously applied the ineffective assistance of counsel articulated by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984).  (*Id.* at 5.)  Instead, Petitioner asserts that the standard used in *United States v. Cronic*, 466 U.S. 648 (1984) or in *Hill v. Lockhart*, 474 U.S. 52 (1985) is appropriate and entitles Petitioner to relief.  (*Id.*)  Petitioner bases this argument entirely on his allegation that his trial counsel failed to investigate the circumstances of his indictment.  (*Id.* at 6.)  Petitioner asserts that an investigation would have revealed that he committed criminal actions under duress, and that "follow-up statements" provided by his co-defendants could reveal "potential impeachment evidence" and "would have verified Petitioner's duress claim."  (*Id.* at 7.)  Petitioner also asserts that he is "legal[ly] innocent" of the crime of first-degree robbery, and trial counsel's investigation would have revealed that Petitioner lacked the intent necessary to sustain the charge.  (*Id.*) Instead, Petitioner states that he apparently would have been guilty of only "Grand Larceny with an accompanying Malicious Assault," as the purpose of the assault of the victim here was not primarily to deprive the victim of goods, but rather to retaliate for an alleged rape.  (*Id.*)

The Sixth Amendment guarantees a criminal defendant "the right to the effective assistance of counsel."  *Strickland*, 466 U.S. at 686.  In *Strickland*, the Supreme Court annunciated a two-

prong test for determining whether counsel was ineffective.   Under this test,  a defendant must show (1) "that counsel's performance was deficient[,]" which requires a "showing that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the  Sixth  Amendment" and  (2) "that  the  deficient  performance  prejudiced  the defense[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Petitioner must overcome two layers of deference for the Court to sustain his ineffective assistance of counsel objections.   First, the Supreme Court's pronouncement in *Strickland* accords to his counsel a "highly deferential" level of judicial scrutiny. *Id.* at 689.   Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.*   The burden falls to Petitioner to demonstrate otherwise. *See id.* at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.   The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.").   If counsel made a "strategic choice" after "thorough investigation of law and facts," the act is "virtually unchallengeable." *Id.*   Acts or omissions not determined to be strategic—either because they were not adequately informed or they were not conscious decisions at all—are still analyzed by an objective  reasonableness  standard. *See Roe  v.  Flores-Ortega*,  528  U.S.  470,  481 (2000); *Kimmelman v. Morrison*, 477 U.S. 365, 375, 386 (1986).

If the reviewing court determines under this deferential standard that counsel's action fell outside the accepted range of professionally reasonable conduct, the challenger must also show

that he was prejudiced by the errors—that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.   A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.*   In addressing ineffective assistance of counsel claims, courts may address either issue—counsel's performance or prejudice from the alleged error—first, since a finding adverse to the petitioner on either issue is dispositive. *See id.* at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one . . . .   If it is easier to dispose of [the] claim on the ground of lack of sufficient prejudice, . . . that course should be followed.").

In addition to this deferential standard, § 2254 petitioners making ineffective assistance claims must show that the reviewing state court applied *Strickland* unreasonably. *See Elmore v. Ozmint*, 661 F.3d 783, 856–66 (4th Cir. 2011).   The Supreme Court has noted that "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted) (citations omitted) (noting that "[s]urmounting *Strickland*'s high bar is never an easy task" and that "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult").   "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*   Ultimately, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

9

Here, Petitioner mistakenly argues for a standard other than *Strickland* to apply, relying on *Cronic* and *Hill* to argue the PF&R unreasonably applied the wrong standard. In *Cronic*, notably decided the same day as *Strickland*, the Supreme Court held that the Tenth Circuit Court of Appeals erred when it inferred that the defendant's right to effective assistance of counsel had been violated but without actually identifying "a breakdown in the adversarial process that would justify a presumption that respondent's conviction was insufficiently reliable to satisfy the Constitution." *Cronic*, 466 U.S. at 662. While the Supreme Court acknowledged that the factors relied upon by the Tenth Circuit in its decision were "relevant to an evaluation of a lawyer's effectiveness," the Court concluded that "neither separately nor in combination do [the factors] provide a basis for concluding that competent counsel was not able to provide [the] respondent with the guiding hand that the Constitution guarantees." *Id.* at 663. Contrary to Petitioner's assertion, the Court only held that the Tenth Circuit erred in utilizing an inferential approach, and in fact directed that ineffective assistance claims based on *specific* errors are to be analyzed pursuant to *Strickland*. *Id.* at 666, n.41.

Petitioner's argument for a different standard in reliance on *Hill* is similarly misplaced. In *Hill*, the Supreme Court held that *Strickland*—which was decided in the context of a capital sentencing proceeding—applies equally well to ineffective assistance claims "arising out of the plea process." *Hill*, 474 U.S. at 58. The Court reasoned that the first prong of the *Strickland* analysis—whether counsel's performance was deficient—as to those challenges to the plea process remained "nothing more than a restatement of the standard of attorney competence," while the second prong, prejudice, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 58–59.

10

Presumably, then, it is the second prong as applied through *Hill* with which Petitioner disagrees.   Petitioner has asserted that he was prejudiced by his trial counsel's failure to investigate, as an investigation could have revealed Petitioner's defenses of "duress" and "legal innocence."   (ECF No. 28 at 7.)   What specifically would be revealed, however, is not clear other than Petitioner's assertion of "potential impeachment evidence."   (ECF No. 28 at 12.)   This alone is fatal to Petitioner's claim.   *See Walton v. Ballard*, No. 2:15-cv-11423, 2018 WL 1582737 at *7 (S.D. W. Va. Mar. 30, 2018) ("To prevail on an [ineffective assistance of counsel] claim based on a failure to investigate, a petitioner must specify 'what an adequate investigation would have revealed.'") *appeal dismissed*, 738 Fed. App'x 159 (4th Cir. 2018), *cert. denied*   139 S. Ct. 2743 (2019);   *Campbell v. United States*, Civ. Action No. 5:07-cv-0120, 2009 WL 6327477, at *11 (S.D.W. Va. Nov. 6, 2009) (citations   omitted), *report and recommendation adopted*, Civ. Action No. 5:07-0120, 2010 WL 1379992 (S.D.W. Va. Mar. 31, 2010) ("An allegation that an attorney conducted an inadequate investigation does not warrant relief absent a proffer of the specific favorable evidence the investigation would have brought out.").   Indeed, this is a recycled argument that Petitioner has asserted at nearly every stage in his post-conviction proceedings, an argument which has been unanimously rejected.   (*See, e.g.*, ECF No. 2 at 5; 12–14 at 4; 12–17 at 41, ¶ 74; 12–19 at 5–7.)   Of course, this is notwithstanding the fact that no court in Petitioner's post-conviction proceedings has found that counsel was ineffective or that any ineffectiveness prejudiced Petitioner.

Moreover, even if the Court were to entertain Petitioner's assertion that his trial counsel utterly failed to investigate the facts of this matter, Petitioner's claim is directly refuted by the record.   During his original plea hearing, Judge Bloom inquired of Petitioner whether his counsel

11

"made an adequate and proper investigation of this case so as to be in a position to adequately advise you," to which Petitioner responded, "Yes, your Honor." (ECF No. 12–2 at 16:3–7.) Further, and concerning Petitioner's repeated assertion that counsel failed to hire an investigator, or "failed to investigate period," (ECF No. 21 at 27), his counsel testified that while the Public Defender's Office "do[es] not hire private investigators," they do utilize in-house investigators. (ECF No. 12–15 at 18:20–19:2, 35:20–36:2.)

More to the point, the record demonstrates that counsel did investigate, and Petitioner has offered no evidence to the contrary. Petitioner's trial counsel reviewed the evidence provided by the State, which consisted of statements from all Petitioner's co-defendants, as well as a statement from Petitioner, in which he implicated himself in the robbery.[1] (*See id.* at 14:5–15.) Moreover, the State also provided video surveillance of the apartment building where the robbery took place, which showed Petitioner entering the victim's apartment at the time of the robbery. (*Id.* at 20:3–

---

[1] Further bolstering Petitioner's statement to police was the following exchange at Petitioner's plea hearing, in which Petitioner admitted to the crime charged:

THE COURT: All right. Please tell me what happened. Who, what, when and where?

DEFENDANT PARKS: Vista View Apartments on the east end of Charleston. I went up with my co-defendant, and I was in support of helping him beat up [the victim] and helped receive the goods.

THE COURT: And you did steal, rob drugs and cash; is that correct?

DEFENDANT PARKS: Yes, your Honor.

(ECF No. 12-2 at 30:4–12.) Petitioner's guilty plea was for the crime of Robbery in the First Degree. (*See* ECF No. 2 at 1.) The crime of robbery, derived from the common law, is defined as follows: "(1) the unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with intent to steal the money or goods." Syl. Pt. 1, *State v. Harless*, 285 S.E.2d 461, 462 (W. Va. 1981). West Virginia's robbery statute divides this common law crime into separate classes, of which only the first degree is relevant here. *See* W. Va. Code § 61-2-12. A person is guilty of robbery in the first degree if he "commits or attempts to commit robbery by: (1) Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon[.]" *Id.* at § 61-2-12(a).

13, 30:3–6.)   Coupled with Petitioner's admissions in his own statement, this evidence was sufficient to support the guilty plea.   Indeed, the state circuit court also found that the hiring of an independent investigator by Petitioner's trial counsel would have been "unnecessary," as each of his co-defendants had hired investigators and still pled guilty to the charges.   (ECF No. 12-17 at 42, ¶ 75.)   As he has here, Petitioner offered the Circuit Court no indication as to what evidence *would* be uncovered that would have changed the outcome of the proceedings.   (*Id.*)   As the Circuit Court aptly noted,

> [Petitioner] fails to provide any evidentiary support whatsoever for this contention rendering it subject to summary dismissal.   The West Virginia Supreme Court has noted that the standard for review of the performance of counsel in habeas matters is based upon *Strickland/Miller*. That standard requires that but for the alleged errors, the result in petitioner's action *would* have been different not *could* have been different.

(*Id.* at 41–42, ¶ 74 (emphasis in original).)

Simply, Petitioner only offers that further questioning of his co-defendants *could* provide "potential impeachment evidence."   (ECF No. 28 at 12.)   Not only does this fall short of the standard required for alleging a failure-to-investigate claim, but, as noted,   the record bears out that trial counsel did investigate.   Therefore, Petitioner has failed to demonstrate that trial counsel's performance was deficient and that the lack of additional investigation was prejudicial. As a result, Petitioner has similarly failed to demonstrate that the state circuit court's findings were an unreasonable application of clearly established federal law.   For the foregoing reasons, Petitioner's objection to the PF&R that trial counsel was ineffective is **OVERRULED.**

> B.  *The Waiver Doctrine*

Next, Petitioner objects to the PF&R's reliance on what he identifies as the "waiver doctrine."   (ECF No. 28 at 10.)   Petitioner apparently believes that the PF&R recommends

13

dismissing his ineffective assistance of counsel claim because it was "waived" as the result of Petitioner affirming that he was satisfied with counsel's performance in sworn testimony before the circuit court during his plea hearing.   (*See id.* at 11.)   Petitioner contends that this is a "fundamentally unfair question to ask, and invokes various ethical considerations."   (*Id.*) Therefore, Petitioner argues that this "waiver" was "no waiver at all because it was not intelligent." (*Id.*)

Petitioner is mistaken with this objection, as the only claim that has been waived is his ineffective assistance of *appellate* counsel claim, a point that Petitioner conceded in his response to Respondent's motion for summary judgment.[2]   (ECF No. 21 at 7 ("Petitioner also concedes that the claim against Appellate Counsel is procedurally defaulted.   Accordingly Petitioner has no objection to the summary dismissal of this ground, as it was a typographical error to include Appellate Counsel in his ineffective assistance claim.").)   As demonstrated by the Court's analysis above, Petitioner's ineffective assistance of trial counsel claims were not waived. Therefore, Petitioner's objection as to the waiver of his ineffective assistance of counsel claim is **OVERRULED**.

---

[2] As to Petitioner's apparent perturbation with the PF&R's reference to his answer in open court regarding trial counsel's communications, (ECF No. 24 at 29), the state circuit court made "detailed findings of fact" as to trial counsel's explanation of the plea agreement and that the "plea colloquy amply demonstrate[d] that the plea was knowing, voluntary and understanding."   *Parks v. Ames*, No. 19-0458, 2020 WL 4355274 at *4 (W. Va. July 30, 2020).   The plea colloquy was given considerable weight by the state circuit court, the Supreme Court of Appeals, and the PF&R because "[s]olemn declarations in open court carry a strong presumption of verity."   *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).   As demonstrated *supra*, Petitioner's ineffective assistance of trial counsel was not waived, but he instead failed to demonstrate that the state court's application of federal law was unreasonable and further failed to show that counsel was constitutionally ineffective and that the alleged errors were prejudicial such that he would be entitled to relief.

### C.  Intelligent Guilty Plea

Next, Petitioner objects to the finding that the Supreme Court of Appeals decision upholding the denial of his motion to withdraw his guilty plea was not erroneous.  (ECF No. 28 at 12.)  In support of this objection, Petitioner argues that the law relied upon by the PF&R "primarily comes from the Fourth Circuit, not the United States Supreme Court."  (*Id.*) Petitioner further argues that the PF&R incorrectly asserts that he is using hindsight to determine that his potential defenses to the charges were legitimate, instead of acknowledging that his defenses "were viable at the time of the offense under the facts that reasonably could have been known at the time."  (*Id.* at 13.)  Finally, Petitioner argues that his plea was "unintelligent" because "Petitioner did not enjoy the benefit of effective counsel."[3]   (*Id.*)

At the outset, Petitioner seems to misapprehend the nature of the Fourth Circuit Court of Appeals, as he appears to argue that Fourth Circuit precedent is not binding in this district, absent a decision by the Supreme Court.   "The United States Court of Appeals for the Fourth Circuit is one of twelve regional appellate courts within the federal judicial system."  UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT, http://ca4.uscourts.gov/about-the-court (last visited July 28, 2021).   The Fourth Circuit consists of Maryland, Virginia, West Virginia, North Carolina, and South Carolina.  *Id.*  As this Court's sister district stated, " a district court is bound by the

---

[3] As to this point, the Court notes that Petitioner has not objected to the PF&R's analysis regarding his ineffective assistance of counsel claim regarding the communications between himself and counsel as to his guilty plea.  (*See* ECF No. 28.)   Petitioner asserted three errors he believed trial counsel to have committed: (1) Failure to challenge the sufficiency of the indictment, (ECF No. 2 at 5); (2) failure to investigate, (*id.*); and (3) failure to discuss ramifications of the plea agreement, (*id.*).   As evidenced *supra*, Petitioner did object to the PF&R's analysis regarding the failure to investigate, but Petitioner did not object to the PF&R's other recommended findings regarding his claims of ineffective assistance.   Indeed, Petitioner premises at least a part of the instant objection on his argument that trial counsel failed to investigate.  (ECF No. 28 at 12.)   Because the Court has already addressed that objection above, Petitioner's objection that trial counsel was ineffective based on the alleged failure to investigate is **OVERRULED** as it pertains to his guilty plea.

precedent set by its Circuit Court of Appeals, until such precedent is overruled by the appellate court or the United States Supreme Court."   *United States v. Brown*, 74 F.Supp.2d 648, 652 (N.D. W. Va. 1998).   *See also Doe v. Charleston Area Medical Center*, 529 F.2d 638, 643 (4th Cir. 1975) ("Such a decision is binding, not only upon the district court, but also upon another panel of this court—unless and until it is reconsidered en banc.").   Because this district sits in the state of West Virginia, it is properly bound by decisions issued by the Fourth Circuit.

Petitioner's remaining objection to the PF&R as to his guilty plea is premised on his belief that he is "legally innocent of the offense charged."   (ECF No. 28 at 12.)   He asserts that "[i]t would flout prudence [*sic*] to allow an individual who is maintaining that there was no robbery to plead guilty to robbery, and then improvidently deny him the right to withdraw his plea[.]"   (*Id.*) Petitioner also argues that his plea was not made intelligently, largely in part due to trial counsel's alleged errors, which this Court has already addressed.   Notably, this is an argument that Petitioner has advanced at nearly every stage of his post-conviction proceedings.

First, Federal Rule of Criminal Procedure 11 permits the withdrawal of a guilty plea before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Similarly, Rule 32(e) of the West Virginia Rules of Criminal Procedure permits the withdrawal of a plea "if the defendant shows any fair and just reason."   However, a defendant does not have an "absolute right" to withdraw a guilty plea, "and the district court has discretion to decide whether a 'fair and just reason' exists upon which to grant a withdrawal."   *United States v. Bowman*, 348 F.3d 408, 413 (4th Cir. 2003).   *See also Duncil v. Kaufman*, 394 S.E.2d 870, 873 (W. Va. 1990) (citing and collecting federal cases).

16

The Supreme Court of Appeals of West Virginia has previously articulated the factors a circuit court must consider when a defendant moves to withdraw a plea, as follows:

> A mere declaration of innocence does not entitle a defendant to withdraw his guilty plea. The general rule is that in the exercise of its discretion to permit withdrawal of a guilty plea before sentencing based on a defendant's assertion of innocence, a trial court should consider the length of time between the entry of the guilty plea and the filing of the motion to withdraw, why the grounds for withdrawal were not presented to the court at an earlier point in the proceedings, whether the defendant maintained his innocence throughout the plea proceedings, whether the State's case will be prejudiced, and whether the defendant has articulated some ground in support of his claim of innocence.

*Id.* at 871. These factors are similar to those considered by the Fourth Circuit. *See United States v. Moore*, 931 F.2d 245 (4th Cir. 1991). The Fourth Circuit, in considering the *Moore* factors, has also stated that the "most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted." *Bowman*, 348 F.3d at 414.

In analyzing Petitioner's claim on direct appeal of the denial of his motion to withdraw the guilty plea, the Supreme Court of Appeals reasoned as follows:

> Here, petitioner based his motion, in part, upon his alleged innocence, claiming he had a "potential defense" to the crime charged. However, upon a review of the record, this Court finds that the circuit court did not abuse its discretion in this matter. The record in this proceeding supports the circuit court's order denying petitioner's motion. Contrary to petitioner's argument that he had a potential defense to the first-degree robbery, petitioner admitted in his plea colloquy that he participated in the robbery. Further, petitioner offered no additional evidence in support of his innocence or his motion. The circuit court advised petitioner that he must articulate a fair and just reason in order for it to consider his motion to withdraw. However, it is clear from the record that petitioner chose not to testify and failed to articulate any further basis for his motion. Accordingly, the circuit court correctly found that, absent some additional evidence, petitioner made a fully-informed decision to plead guilty. Therefore, petitioner failed to provide a fair and just reason for his plea to be withdrawn.

*State v. Parks*, No. 10595, 2017 WL 2608433 at *2 (W. Va. June 16, 2017).

17

A review of the record substantiates the Supreme Court's findings, particularly considering Petitioner's plea colloquy.   The circuit court verified that Petitioner both knew the terms and understood the ramifications of the plea agreement.   (ECF No. 2 at 14:12–24.)   The colloquy also reveals that Petitioner understood that rejecting the plea meant the case would go to trial, (*id.* at 15:18); reviewed the State's evidence in the case and had discussed the defenses to that evidence, (*id.* at 15:13–16:2); and understood his constitutional rights, including those waived by entering the plea, (*id.* at 16:23–17:12).   The circuit court also ensured that Petitioner understood the State's burden of proof for sustaining a conviction at trial, as well as the potential sentences if he were convicted at trial.   (*Id.* at 23:10–26:6.)   Importantly, as discussed earlier, the circuit court further confirmed that trial counsel had made an "adequate and proper investigation of this case so as to be in a position to adequately advise" Petitioner, had "done each and every thing that [Petitioner] believe[d] or have asked them to do to make a recommendation . . . and to prepare for trial," and that Petitioner was "completely satisfied" with trial counsel's representation.   (*Id.* at 16:3–17.)   Finally, the circuit court ensured that the plea was voluntary.   (*Id.* at 31:21.)   The colloquy, therefore, sufficiently established that the plea was knowing, intelligent, and voluntary, and Petitioner has failed to introduce any "fair and just" reason that would support the granting of the motion to withdraw the plea.

As to Petitioner's claim of "legal innocence," it simply is without merit.   As noted by this Court above, *supra* n.1, Petitioner admitted to his involvement in the crime, including the necessary elements, in his plea to the charges.   (ECF No. 12-2 at 30:4–12.)   Additionally, Petitioner admitted in his statement supporting his plea that he "committed robbery by violence – striking and beating" the victim and "took money."   (ECF No. 12-3 at 2.)   This is in addition to

the statements to and evidence collected by the police in this matter, including that Petitioner had struck the victim and had used the proceeds from the robbery to purchase a new phone and an Xbox. (*See* ECF Nos. 12-2 at 13; 12-15 at 36; 12-17 at 4–5, 7–8; 12-22 at 6–7.) Moreover, Petitioner had the opportunity to offer testimony and evidence on the matter when Petitioner moved the circuit court to withdraw his plea, but Petitioner declined. (ECF No. 12-9 at 3:10.) Despite having the opportunity to provide a fair and just reason to withdraw the plea, Petitioner did not provide any and instead simply relied on his assertions that he was young, made the wrong decision, and had potential defenses to the charges. (*See* ECF No. 12–17 at 30.)

"[T]he decision to plead guilty . . . frequently involves the making of difficult judgments." *McMann v. Richardson*, 397 U.S. 759, 769 (1970). Petitioner undoubtedly made difficult judgments here. But while Petitioner may second-guess his decision now, he has not shown that the denial of his motion to withdraw his plea was unreasonable nor has he shown that the Supreme Court of Appeals' decision upholding that denial was contrary to federal law or an unreasonable application of law or determination of facts. Therefore, based on the foregoing, Petitioner's objection regarding his guilty plea is **OVERRULED**.

### D. Denial of Discovery Request

Finally, Parks objects to the PF&R's conclusion that he is not entitled to discovery in this matter because he is not entitled to relief. (ECF No. 28 at 13.) Petitioner maintains that "this is no ordinary case," and there are "several issues of first impression not developed because counsel was ineffective." (*Id.*) Petitioner argues that he is entitled to discovery because relief under Rule 56(d) of the Federal Rules of Civil Procedure is "broadly favored and should be liberally granted[.]" (*Id.* (quoting *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 484 (4th Cir. 2014).)

Petitioner asserts that "because the facts are not fully developed, he is entitled to discovery." (*Id.* at 14.)

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Thus, and contrary to Petitioner's argument, "the 'broad discovery provisions' of the Federal Rules of Civil Procedure [do] not apply in habeas proceedings." *Id.* (citing *Harris v. Nelson*, 394 U.S. 286, 295 (1969)). Instead, Rule 6 of the Rules Governing § 2254 applies. *Id.*

Rule 6 states that a "judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure[.]" "Good cause" for discovery exists when a habeas petition establishes a prima facie case for relief. *See Harris*, 394 U.S. at 290. More specifically, discovery is warranted "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief[.]" *Id.* at 300. *See also Bracy*, 520 U.S. at 908–09.

Petitioner has fallen short of that standard here. None of the issues presented here are novel nor has Petitioner made the requisite showing entitling him to discovery or relief. Therefore, based on the foregoing, Petitioner's objection to the denial of discovery is **OVERRULED**.

## IV.   CONCLUSION

For the reasons more fully explained above, the Court **OVERRULES** Petitioner's Objections to the PF&R, (ECF No. 27); **ADOPTS** the PF&R, (ECF No. 24); **GRANTS** Respondent's Motion for Summary Judgment, (ECF No. 12); and **DENIES** Petitioner's Petition

for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF No. 2).   The Clerk of Court is further **DIRECTED** to remove this action from the Court's active docket.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right.   28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Pursuant to Rule 11(a), Petitioner may not appeal the District Court's denial of a certificate of appealability, but he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:          September 29, 2021

THOMAS E. JOHNSTON, CHIEF JUDGE